JON M. SANDS
Federal Public Defender
District of Arizona
850 W. Adams Street, Ste. 201
Phoenix, Arizona 85007
Telephone: (602) 382-2700

CELIA RUMANN
AZ State Bar No. #0015993
Asst. Federal Public Defender
MICHAEL O'CONNOR
CA State Bar No. #180086
Attorneys for Defendant
celia_rumann@fd.org
moconnor@phoenixlaw.edu

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Lezmond Mitchell,<br><br>Movant,<br><br>v.<br><br>United States of America,<br><br>Respondent. | No. CR-01-1062-PCT-MHM<br><br>**MOTION FOR APPOINTMENT OF COUNSEL TO PURSUE POST-CONVICTION REMEDIES, AND MEMORANDUM OF LAW IN SUPPORT** |

## I. MOTION

Mr. Lezmond Mitchell, an indigent federal prisoner under sentence of death imposed by this Court, respectfully moves the Court, pursuant to 18 U.S.C. § 3599(a)(2), to appoint counsel to represent him in pursuing any and all available post-conviction remedies, including the investigation, preparation, and prosecution of a motion for post-conviction relief pursuant to 28 U.S.C. § 2255.[1] Specifically, Mr.

[1] This motion is being presented on Mr. Mitchell's behalf by undersigned counsel, Celia Rumann and Michael O'Connor, whom this Court appointed to represent Mitchell in the direct appeal proceedings which are expected to conclude shortly, because Mr. Mitchell is otherwise unrepresented and not in a position to file

Mitchell requests that the Court appoint Statia Peakheart, a Deputy Federal Public Defender with the Office of the Federal Public Defender for the Central District of California.

The appointment of Ms. Peakheart would serve this Court's mission in providing counsel to represent death sentenced inmates for habeas proceedings well for a variety of reasons.

First, Ms. Peakheart is a member in good standing of the Bars for the States of California and Oklahoma. Ms. Peakheart is a highly competent attorney with knowledge of substantive criminal and habeas corpus law, as well as experience in investigating, preparing and Motion for Appointment of Counsel to Pursue Post-Conviction Remedies, and Memorandum of Law in Support litigating capital post-conviction cases. Her résumé is attached. *See* Attachment A. She is an assistant supervisor for the Federal Defender's Capital Habeas Unit, which challenges state and federal judgments in California and other states' district courts. She supervises five attorneys; she also supervises or is counsel on twenty-four of the Unit's capital habeas cases. Specifically, she is co-counsel in a § 2255 federal capital case from the Central District of California, and supervises another federal capital § 2255 case from

---

this motion with the Court himself. This request is made on his behalf and with his consent. Celia Rumann and Michael O'Connor cannot serve as Mr. Mitchell's 2255 counsel due to their previously existing professional commitments. Moreover, as the Court is aware, 2255 counsel must assess prior counsel's performance as part of evaluating the available claims for relief. Neither Ms. Rumann nor Mr. O'Connor can undertake such a review of their own representation even if they were otherwise available for appointment. These circumstances require the appointment of other counsel. Both Ms. Rumann and Mr. O'Connor are confident that the attorney whose appointment this Motion seeks is appropriately qualified to represent Mr. Mitchell in any post-conviction proceedings.

the Northern District of Texas. She is also co-counsel in a federal capital trial case in the Central District of California (involving the murder of a BOP correctional officer, and the attempted murder and assaults on four other officers); in that case, the district judge recently agreed with defense counsel that the client, who is incompetent to stand trial, could not be forcibly administered anti-psychotic medication.

Ms. Peakheart graduated from the University of Oklahoma College of Law in 1991. She was a staff attorney at the United States Court of Appeals for the Third Circuit from September 1991 to August 1993; there, she coauthored the Circuit's Death Penalty Manual. When the clerkship ended, Ms. Peakheart became a staff attorney at the Arizona Capital Representation Project, a federally-funded office that assisted counsel with their pretrial, trial and post-conviction capital cases in state and federal courts; she was also co-editor of the Capital Case Defense Manual for use by trial attorneys in Arizona. Ms. Peakheart remained at the Project until 1995, when it lost its funding; thereafter, in March 1996, Ms. Peakheart became a Deputy Federal Public Defender at the CHU. She has been an assistant supervisor since June 2006.

Second, the appointment of Ms. Peakheart and her office will result in enormous cost savings to this Court's Criminal Justice Act Budget. Ms. Peakheart's office has extensive resources in its investigators, paralegals, mitigation specialists, and funds for expert assistance. With those resources available, asking this Court for such assistance would not be necessary.

Ms. Peakheart an appropriate choice to represent Mr. Mitchell under the standards set forth in § 3599 for counsel in capital § 2255 proceedings.

This request is extremely time-sensitive because, as we explain below, Mr. Mitchell's statute of limitations for filing a motion for relief under 28 U.S.C. § 2255

will begin running in the very near future, and he is both indigent and unrepresented. Accordingly, it is urgent that Mr. Mitchell receive appointment of appropriately qualified counsel in an expeditious manner, lest he be denied his right to comprehensive, meaningful post-conviction review of his conviction and death sentence.

## II. MEMORANDUM OF LAW IN SUPPORT

### A. Lezmond Mitchell is Entitled to the Appointment of Counsel for Seeking post-Conviction Relief, and His Brief Statute of Limitations for Filing Such a Motion will Begin Running Shortly.

The government charged Mr. Mitchell with Crime on an Indian Reservation (CIR)- First Degree Murder and Aiding and Abetting, in violation of 18 U.S.C. §§ 1153, 1111, and 2; Carjacking, Resulting in Death, Aiding and Abetting, in violation of 18 U.S.C. §§ 2119 and 2; CIR-Felony Murder, Robbery, Aiding and Abetting, in violation of 18 U.S.C. §§ 1153, 1111, 2111 and 2; CIR-Robbery, Aiding and Abetting, in violation of 18 U.S.C. §§ 1153, 1111, 1201(a)(2) and 2; CIR-Kidnapping, Aiding and Abetting, in violation of 18 U.S.C. §§ 1153, 1201(a)(2) and 2; and Use of a Firearm in a Crime of Violence, Aiding and Abetting, in violation of 18 U.S.C. §§ 924(c)(1)(A)(I, ii, and iii) and 2. Of these charges, only count two, the carjacking count carried the possibility of the death penalty. CR87 (Notice of Intent to Seek the Death Penalty).

Trial was held before this Court with the jury convicting Mr. Mitchell on all counts of the indictment on May 8, 2003. CR311; RTT3581-3585.

Pursuant to 18 U.S.C. 3591 et. seq., the penalty phase of the trial, as to the carjacking count, began on May 14, 2003, before the same jury. CR314; RTT3728 et seq. On May 20, 2003, the jury reached a verdict of death on Count 2, the

carjacking count by special verdict. The jury announced its verdict of death as to both victims. CR325; RTT4196-4208. On September 15, 2003, the district court issued its judgement and commitment as to Mitchell. CR425.

A Notice of Appeal was filed on September 22, 2003. CR426. The judgment of the United States Court of Appeals for the Ninth Circuit was entered on September 5, 2007, and amended on October 9, 2007. On direct appeal, the United States Court of Appeals for the Ninth Circuit affirmed the convictions and the death sentence. *See United States v. Mitchell*, 502 F.3d 931 (9th Cir. 2007). Petitioner filed a timely Petition for Rehearing and Rehearing *En Banc*, which was denied by Order Filed on November 16, 2007.

On February 11, 2008, Mr. Mitchell filed a timely petition for a writ of *certiorari* with United States Supreme Court. (Docket No. 07-9351). The United States is presently scheduled to file its brief in opposition on April 16, 2008, and it is anticipated that the petition will likely be denied shortly.[2] Once *certiorari* is denied, Mr. Mitchell has just one year from the date of denial to file a motion for relief under 18 U.S.C. § 2255. *See id.* (providing that "a 1-year period of limitation," running from the date the defendant's conviction became final on direct appeal, "shall apply to a motion under this section"). At present, however, Mr. Mitchell is unrepresented by counsel for the purpose of investigating, preparing, and filing such a motion.

Mr. Mitchell wishes to pursue every avenue of post-conviction relief, including a motion pursuant to 28 U.S.C. § 2255 and any other available remedies including

---

[2] The United States Supreme Court grants fewer than 100 petitions for *certiorari* each year out of roughly 7,000 applications. *See* http://www.supremecourtus.gov/about/justicecaseload.pdf (last visited on 2/21/08).

appeal and executive clemency should his motion not prove successful. To do so, Mr. Mitchell will need the assistance of competent counsel. Because Mr. Mitchell's statute of limitations for seeking post-conviction relief under § 2255 will begin running soon, counsel should be appointed at the earliest opportunity, to vindicate Mr. Mitchell's right to "pre-application legal assistance" in investigating and preparing his post-conviction claims. *See McFarland v. Scott*, 512 U.S. 849, 855 (1994).[3]

At this juncture in his case, 18 U.S.C. § 3599 requires the appointment of qualified counsel for Mr. Mitchell. *See* 18 U.S.C. § 3599(a)(2) ("In any post-conviction proceeding under section 2254 or 2255 of title 28, United States Code, seeking to vacate or set a side a death sentence, any defendant who is or becomes financially unable to obtain adequate representation or investigative, expert, or other reasonably necessary services shall be entitled to the appointment of one or more attorneys and the furnishing of such other services in accordance with subsections (b) through (f).").

Mr. Mitchell is "financially unable" to obtain counsel or other necessary services. This Court previously determined him to be indigent, and accordingly provided him court-appointed representation at trial and on direct appeal. Mr. Mitchell has been incarcerated since his arrest in this case in 2001, and his financial situation has not changed. Therefore, pursuant to § 3599(a)(2), Mr. Mitchell is

---

[3] *McFarland* applies equally of course to § 2255 proceedings. Indeed, § 2255 cases where death has been imposed are for these purposes nearly identical to § 2254 cases and are quite unlike non-capital federal post-conviction cases.

entitled to the appointment of qualified counsel to pursue all available post-conviction remedies.

Prior to the effective date of § 3599, counsel were appointed for indigent death-sentenced defendants in § 2254 and § 2255 proceedings under 21 U.S.C. § 848(q). The latter section was repealed and re-codified at § 3599. Interpreting 21 U.S.C. § 848(q), the Supreme Court found that Congress had established this statutory right to qualified counsel in capital cases in recognition of "the seriousness of the penalty and . . . the unique and complex nature of the litigation." *McFarland v. Scott*, 512 U.S. 849, 855 (1994) (quoting 21 U.S.C. § 848(q)(7)).

Moreover, as with the previously existing right to counsel under § 848(q), the right to counsel under § 3599 attaches *prior* to the filing of a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct the sentence. Any other interpretation of the statute would leave condemned prisoners without meaningful access to the courts. As the Supreme Court explained with respect to the prior provision:

> Congress' provision of a right to counsel . . . reflects a determination that quality legal representation is necessary in capital habeas corpus proceedings in light of the "seriousness of the possible penalty and . . . the unique and complex nature of the litigation." § 848(q)(7). An attorney's assistance prior to the filing of a capital defendant's habeas corpus petition is crucial because "the complexity of our jurisprudence in this area . . . makes it unlikely that capital defendants will be able to file successful petitions for collateral relief without the assistance of persons learned in the law.

*McFarland*, 512 U.S. at 855-56 (quoting *Murray v. Giarratano*, 492 U.S. 1, 14 (1989) (Kennedy, J., joined by O'Connor, J., concurring in the judgment)).

In construing the relevant statute to require appointment of counsel *prior* to the filing of the petition, the Court noted that Congress provided for reasonably necessary investigative and expert resources to be made available to counsel. Since such

services "may be critical in the pre-application phase of a habeas corpus proceeding, when possible claims and their factual bases are researched and identified," the court reasoned that Congress could only have intended that counsel be appointed before any actual habeas petition or motion for relief was filed. *McFarland*, 512 U.S. at 855. The Court's analysis makes plain that the right to counsel effected by § 3599 is a right to assistance in identifying, developing, and pleading all available claims for relief. Such claims are usually those that were not or could not have been raised in earlier proceedings because they rest on facts outside the trial record and thus require investigation and often expert resources.

To give meaningful effect to the right Congress has established in 18 U.S.C. § 3599, qualified counsel must be appointed as promptly as possible. As Justice O'Connor has observed:

> It is almost meaningless to provide a lawyer to pursue claims on federal habeas if the lawyer is not available to help prepare the petition. First, the habeas petition, unlike a complaint, must allege the factual underpinning of the petitioner's claims. *See* Habeas Corpus Rule 2(c) ("The petition . . . shall specify all the grounds for relief which are available to the petitioner . . . and shall set forth in summary form the facts supporting each of the grounds thus specified"). Furthermore, district courts are authorized to summarily dismiss petitions which appear on their face to be meritless. . . . And our carefully crafted doctrines of waiver and abuse of the writ make it especially important that the first petition adequately set forth all . . . colorable grounds for relief. Indeed, Congress expressly recognized "the seriousness of the possible penalty and . . . the unique and complex nature of the litigation." 21 U.S.C. § 848(q)(7). Moreover, the statute entitles capital defendants not only to qualified counsel, but also to "investigative, expert or other services . . . reasonably necessary for the representation of the defendant." § 848(q)(9). For such services to be meaningful in the habeas context, they also must be available prior to the filing of a first habeas petition.

*McFarland*, 512 U.S. at 860 (O'Connor, J., concurring in part and dissenting in part).

The labor-intensive tasks associated with developing the factual basis for potential claims for relief, needless to say, require substantial time to complete. Indeed, it should be noted that capital § 2255 proceedings have very little in common with non-capital § 2255 motions, as capital § 2255 motions necessarily involve the additional burden of having to investigate and identify claims related to the *penalty phase* of the underlying criminal proceeding, a feature unique to capital cases. The American Bar Association has aptly described these demands:

> [P]roviding high quality legal representation in collateral review proceedings in capital cases requires enormous amounts if time, energy and knowledge. The field is increasingly complex and ever changing. Collateral counsel has the same obligation as trial and appellate counsel to establish a relationship of trust with the client. But by the time a case reaches this stage, the client will have put his life into the hands of at least one other lawyer and found himself on death row. Counsel should not be surprised if the client initially exhibits some hostility and lack of trust, and must endeavor to overcome these barriers.
>
> Ultimately, winning collateral relief in capital cases will require changing the picture that has previously been presented. . . . As demonstrated by the high percentage of reversal, . . . the trial record is unlikely to provide either a complete or accurate picture of the facts and issues in the case. [Thus, post-conviction counsel] cannot rely on the previously compiled record but must conduct a thorough, independent [reinvestigation of the case and the client]. Reinvestigating the case means examining the facts underlying the conviction and sentence, as well as such items as trial counsel's performance, judicial bias or prosecutorial misconduct. Reinvestigating the client means assembling a more-thorough biography of the client than was known at the time of trial, not only to discover mitigation that was not presented previously, but also to identify mental-health claims which potentially reach beyond sentencing issues to fundamental questions of competency and mental-state defenses.

American Bar Association, GUIDELINES FOR THE APPOINTMENT AND PERFORMANCE OF DEFENSE COUNSEL IN DEATH PENALTY CASES (February 2003), Guideline 10.15.1. The Supreme Court has endorsed these detailed descriptions of defense counsel's

professional responsibilities in a capital case. *Wiggins v. Smith*, 539 U.S. 510, 524 (2003).[4]

In addition to the substantial challenges posed by post-conviction counsel's duty to conduct a thorough reinvestigation of the relevant facts, counsel must also ensure that no potential constitutional claim for relief is left unexamined, as Mr. Mitchell will likely have no "second chance" if counsel fail, however inadvertently, to identify or develop a meritorious issue. *See Mason v. Meyers*, 208 F.3d 414, 417 (3rd Cir. 2000) (recognizing that as a result of the strict rules governing successive habeas corpus petitions under 28 U.S.C. § 2244(b), "it is essential that habeas petitioners include in their first petition all potential claims for which they might desire to seek review and relief").

All these time-consuming and difficult tasks – including identifying appropriate experts, re-investigating the facts of the case, investigating the client's life history in complete detail (finding witnesses, interviewing witnesses, locating and obtaining documentary evidence), conducting necessary legal research, and writing the post-conviction pleadings themselves – must be completed within one year of the denial of certiorari on direct appeal. *See* 28 U.S.C. § 2255 (setting one-year deadline for filing 2255 petition). That one year period of limitation is about to begin running in this case. *See supra.* Because of the long list of tasks facing post-conviction counsel, and the steadily dwindling time for counsel to accomplish them, Mr.

---

[4] *See also*, *e.g.*, *Smith v. Mullin*, 379 F.3d 919, 942 (10th Cir. 2004) (applying ABA Guidelines to assess reasonableness of defense counsel's investigation and preparation)*; Hamblin v. Mitchell*, 354 F.3d 482, 487 (6th Cir. 2003) (ABA standards are "not aspirational" but reflect "common-sense principles" that are understood to govern "diligent, competent counsel in death penalty cases").

Mitchell respectfully asks that the Court grant this motion appointing Statia Peakheart as soon as possible.

B. **Statia Peakheart is Qualified for Appointment.**

Mr. Mitchell requests that the Court appoint attorney Deputy Federal Public Defender Statia Peakheart as lead counsel for his § 2255 proceedings. Ms. Peakheart graduated from the University of Oklahoma College of Law in 1991. She is admitted to practice in the Central and Northern Districts of California, and the United States Court of Appeals for the Ninth Circuit, and in addition is a member of the bars of Oklahoma and California. She is also a member of the bar of the Supreme Court of the United States. Ms. Peakheart has handled many federal habeas corpus cases and appeals in the federal district, appellate and supreme courts. The appointment of Mr. Peakheart and her office would assure the Court that Mr. Mitchell would get the best legal representation possible. It is essential that habeas counsel investigate every reasonable avenue for relief, and Ms. Peakheart's appointment will serve that goal. The Court could be assured that counsel would raise every viable claim that could be raised with, as noted, substantially less cost to the Court.

In Mr. Mitchell's case, Statia Peakheart was recruited as prospective counsel for Mr. Mitchell by the Federal Capital Habeas Project. As described in a December 18, 2007 memorandum from the Hon. John Gleeson, U.S. District Judge for the Eastern District of New York, writing in his capacity as Chair of the Committee on Defender Services of the Judicial conference of the United States, the Federal Capital Habeas Project is an initiative funded by the Judicial Conference and intended in part to assist courts in capital § 2255 cases by identifying and recruiting qualified, available counsel for the cases. Accordingly, the Judicial Conference recommends

that courts consult with the Federal Capital Habeas Project in appointing post-conviction counsel because the Project's national scope makes it "well situated to assist courts with identification of lawyers who possess the required expertise from inside or, when necessary, outside of a particular district." Courts are regularly appointing out-of-state counsel on these cases, as often on capital § 2254 cases, because of the difficulty in locating counsel with sufficient capital and habeas litigation experience. This is particularly true in situations where the local Federal Defender Office cannot handle the case. Indeed, courts have appointed at least one out-of-district attorney in the majority of the capital § 2255 capital cases currently in litigation.

The Federal Capital habeas Project consulted with undersigned counsel as well as various lawyers in and outside of Arizona in seeking to assist in identifying appropriate counsel for Mr. Mitchell. It believes that the proposed combination of expertise and resources presented by Ms. Peakheart and the Office of the Federal Public Defender for the Central District of California will ensure that Mr. Mitchell is appropriately represented in his upcoming § 2255 proceeding. The Project has requested that undersigned counsel communicate as much to this Court.

Finally, Mr. Mitchell moves the Court to appoint Statia Peakheart.

/ /

/ /

/ /

/ /

/ /

/ /

## CONCLUSION

WHEREFORE, Mr. Mitchell respectfully requests that the Court appoint Statia Peakheart *pro hac vice* to represent him in seeking all available post-conviction remedies.

Respectfully submitted,

s/Celia Rumann
Celia Rumann
Assistant Federal Public Defender
Michael O'Connor
Attorney at Law

Copy of the foregoing transmitted by ECF for filing this 15th day of April, 2008, to:

**Clerk's Office**
United States District Court
Sandra Day O'Connor Courthouse
401 W. Washington
Phoenix, Arizona 85003

Vincent Kirby
Assistant U.S. Attorney
United States Attorney's Office
Two Renaissance Square
40 N. Central Avenue, Suite 1200
Phoenix, Arizona 85004-4408

Copy mailed to:

Statia Peakheart
Deputy Federal Public Defender
321 East Second Street
Los Angeles, California 90012-4206

Lezmond Mitchell
Movant

s/Celia M. Rumann