SEAN K. KENNEDY (145632)
(Sean_Kennedy@fd.org)
Federal Public Defender
STATIA PEAKHEART (200363)
Deputy Federal Public Defender
(Statia_Peakheart@fd.org)
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone (213) 894-2854
Facsimile (213) 894-0081

Attorneys for Defendant-Movant
LEZMOND CHARLES MITCHELL

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| LEZMOND CHARLES MITCHELL,<br>Movant,<br>v.<br>UNITED STATES OF AMERICA,<br>Respondent. | **CAPITAL CASE**<br>28 U.S.C. § 2255<br>Case No. __________<br>(Trial Case No. CR-01-1062-MHM)<br>ORAL ARGUMENT REQUESTED |

**MOTION FOR AUTHORIZATION TO INTERVIEW JURORS IN SUPPORT OF MOTION TO VACATE, SET ASIDE, OR CORRECT THE SENTENCE**

Petitioner, Lezmond Charles Mitchell, through undersigned counsel, respectfully moves the Court to permit his federal habeas counsel, or their representatives, to contact and interview the jurors in his case. Such an opportunity is essential to secure rights guaranteed to Mr. Mitchell by 28 U.S.C. § 2255, 18 U.S.C. § 3599, and the Fifth, Sixth, and Eighth Amendments to the United States Constitution.

**A. Introduction**

Petitioner Lezmond Mitchell hereby moves the Court for authorization to conduct a complete investigation that includes ascertaining whether any member of the jury panel engaged in *ex parte* contacts, considered extrajudicial evidence, allowed bias or prejudice to cloud their judgment, or intentionally concealed or failed to disclose material information relating to their qualifications to serve as jurors in Mr. Mitchell's case. In pursuing this investigation, federal postconviction counsel cannot be foreclosed from interviewing the witnesses who would be the most reliable source of evidence on these claims – the jurors themselves. *See McCleskey v. Zant*, 499 U.S. 467, 498 (1991) (imposes on all post-conviction applicants the obligation to "conduct a reasonable and diligent investigation aimed at including all relevant claims and grounds for relief in the first federal habeas petition." ).

**B. Procedural History**

On September 15, 2003, following a jury trial and penalty phase proceeding, Hon. Mary H. Murguia, United States District Judge for the District of Arizona, sentenced Lezmond Mitchell to death. Mr. Mitchell's direct appeal to the United States Court of Appeals for the Ninth Circuit was not successful, *United States v. Mitchell*, 502 F.3d 931 (9th Cir. 2007), and the United States Supreme Court denied the petition for writ of *certiorari* on June 9, 2008, *Mitchell v. United States*, 128 S.Ct. 2902. Mr. Mitchell is in custody on federal death row in Terre Haute, Indiana.

Section 2255 of Title 28 of the United States Code sets forth a one-year period of limitations for filing a motion to vacate, set aside or correct the sentence. Thus, Mr. Mitchell must file his motion no later than June 9, 2009. In the course

of preparing the § 2255 motion, Mr. Mitchell's federal habeas counsel consider it necessary to interview the jurors who deliberated and decided Mr. Mitchell's capital case. Counsel for Mr. Mitchell hereby move this Court for leave to conduct a full and complete investigation in preparation for Mr. Mitchell's forthcoming motion to vacate, set aside or correct the sentence.

Rule 24.2 of the Local Rules of Criminal Procedure for the District of Arizona makes applicable Civil Rule 39.2 to criminal matters concerning communication with trial jurors. The rule requires the movant to request leave of the Court to interview the jurors post-trial. L.Civ.R. 39.2(b). Approval for the interview should be granted "upon the showing of good cause." *Id.*

**C. Factual Background**

An investigation into potential jury misconduct – no different than an investigation into possible instances of ineffective assistance of counsel or prosecutorial suppression of material evidence – is a standard and essential aspect of any minimally competent federal capital postconviction § 2255 investigation. In this case, no reasonably competent postconviction counsel would fail to question the jurors.

Petitioner's counsel does not seek discovery, but only permission to conduct his investigation. The identities of the jurors are not secret. Their names are publicly available in the district court record. Other identifying information and (dated) contact information are available to counsel in non-public parts of the record. Federal habeas counsel do not request disclosure of any information. This motion seeks only permission for federal habeas counsel to contact these jurors.

## D. ARGUMENT

### 1. Petitioner's Counsel Must Conduct a Reasonable Investigation Including Allegations of Possible Jury Bias, Taint, or Misconduct

A federal postconviction applicant "must assert all possible violations of his constitutional rights in his initial application or run the risk of losing what might be a viable claim." *See, e.g.*, *Brown v. Vasquez*, 952 F.2d 1164, 1167 (9th Cir. 1992). The Supreme Court has made clear that counsel for a postconviction applicant "must conduct a reasonable and diligent investigation aimed at including all relevant claims and grounds for relief in the first federal habeas petition." *McCleskey v. Zant*, 499 U.S. 467, 498 (1991). The Ninth Circuit has characterized this as "a substantial burden." *Brown*, 952 F.2d at 1167. As the Supreme Court explained,

> If what petitioner knows or could discover upon reasonable investigation supports a claim for relief in a federal habeas petition, what he does not know is irrelevant. Omission of the claim will not be excused merely because evidence discovered later might also have supported or strengthened the claim.

*McCleskey*, 499 U.S. at 498.

The United States Constitution guarantees the defendant a trial by impartial jurors who are not exposed to extraneous information or influence or motivated by bias. *See Williams v. Taylor*, 529 U.S. 420 (2000); *Remmer v. United States*, 350 U.S. 377 (1956); *Remmer v. United States*, 347 U.S. 227 (1954). It has long been recognized that jurors' exposure to extrajudicial evidence or their participation in *ex parte* contacts regarding the substance of the trial can undermine the fairness of

the proceeding and entitle a defendant to a new trial.[1] The Supreme Court has affirmed that "an attempt to investigate [a] petitioner's jury" constitutes "diligent . . . efforts to develop the facts" supporting potential claims. *Williams v. Taylor*, 529 U.S. 420, 442-43 (2000).

The American Bar Association's Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases reinforce the necessity of federal postconviction counsel's proposed investigation. *Wiggins v. Smith*, 539 U.S. 510, 524, 534 (2003) (Supreme Court has "long [. . .] referred" to the American Bar Association's standards as "guides to determining what is reasonable" in the representation of capital defendants), *citing Strickland v. Washington*, 466 U.S. 668, 688 (1984), and *Williams v. Taylor*, 529 U.S. 362, 396 (2000)). Those Guidelines make clear that:

> Post-conviction counsel should seek to litigate all issues, whether or not previously presented, that are arguably meritorious under the standards applicable to high quality capital defense

---

[1] *Mattox v. United States*, 146 U.S. 140 (1892) (jurors' exposure to media article in jury room recounting facts relating to prior trial and public anticipation of quick guilty verdicts is prejudicial error warranting relief); *Remmer v. United States*, 347 U.S. 227 (1954) (attempted bribery of juror warrants relief); *Parker v. Gladden*, 385 U.S. 363 (1966) (bailiff's comments to jurors regarding strength of evidence requires relief); *Gibson v. Clanon*, 633 F.2d 851 (9th Cir. 1980) (juror's library research held prejudicial); *United States v. Tebha*, 770 F.2d 1454 (9th Cir. 1985) (receipt of exhibit not introduced in evidence was prejudicial); *Marino v. Vasquez*, 812 F.2d 499 (9th Cir. 1987) (dictionary research and experiment required habeas relief); *Dickson v. Sullivan*, 849 F.2d 403 (9th Cir. 1988) (improper comments by bailiff to jurors compelled habeas relief); *United States v. Maree*, 934 F.2d 196 (9th Cir. 1991) (juror's *ex parte* conversation with friend regarding deliberations was prejudicial error); *Dyer v. Calderon*, 151 F.3d 970 (9th Cir. 1998) (concealment of material evidence during voir dire required habeas relief).

> representation, including challenges to any overly restrictive procedural rules. Counsel should make every professionally appropriate effort to present issues in a manner that will preserve them for subsequent review.

ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases, Guideline 10.15.1 (Duties of Post-conviction Counsel) ¶ C, reprinted in *The Guiding Hand of Counsel*, 31 HOFSTRA L. REV. 913, 1079 (2003).[2]

The commentary explains:

> [C]ollateral counsel cannot rely on the previously compiled record but must conduct a thorough, independent investigation in accordance with Guideline 10.7. (Subsection E(4)). As demonstrated by the high percentage of reversals and disturbingly large number of innocent persons sentenced to death, the trial record is unlikely to provide either a complete or accurate picture of the facts and issues in the case.

*Id.*, Guideline 10.15.1, ¶ C (31 HOFSTRA L. REV. at 1085-86).[3]

---

[2] These obligations were not new to the 2003 Guidelines, but a restatement of principles contained in the earlier 1989 Guidelines:

> B. . . . Counsel should consider conducting a full investigation of the case, relating to both the guilt/innocence and sentencing phases. . . . Postconviction counsel should obtain and review a complete record of all court proceedings relevant to the case. With the consent of the client, postconviction counsel should obtain and review all prior counsel's file(s).
>
> C. Postconviction counsel should seek to present to the appropriate court or courts all arguably meritorious issues, including challenges to overly restrictive rules governing postconviction proceedings.

ABA Guidelines for the Appointment and Performance of Counsel In Death Penalty Cases, Guideline 11.9.3 (Duties of Postconviction Counsel) (1989).

The extent of the burden on federal habeas counsel has, of course, increased as a result of the Supreme Court's 1991 *McCleskey* decision.

[3]

> [I]t is of critical importance that counsel on direct appeal proceed, like all post-conviction counsel, in a manner that maximizes the client's ultimate chances of success. 'Winnowing' issues in a capital

"Collateral counsel should assume that any meritorious issue not contained in the initial application will be waived or procedurally defaulted in subsequent litigation, or barred by strict rules governing subsequent applications." *Id.* (31 HOFSTRA L. REV. at 1086).[4]

As the Supreme Court recognized in *Williams*, claims of possible jury misconduct are often capable of being discovered upon a reasonable and diligent investigation. *Williams*, 529 U.S. at 442-43. In fact, in *Worstzeck v. Stewart*, 118 F.3d 648, 653 (9th Cir. 1997), the inmate-petitioner was barred from filing a successive request for postconviction relief alleging juror impropriety because he had not previously interviewed jurors and could not show that he could not have uncovered this evidence through previous exercise of due diligence. The commentators to the ABA Guidelines recognize that juror misconduct is among the grounds that can give rise to relief and therefore must be thoroughly investigated. Guideline 10.15.1 (31 HOFSTRA L. REV. at 1086). But Petitioner's

---

> appeal can have fatal consequences. Issues abandoned by counsel in one case, pursued by different counsel in another case and ultimately successful, cannot necessarily be reclaimed later. When a client will be killed if the case is lost, counsel should not let any possible ground for relief go unexplored or unexploited.

Commentary to Guideline 10.15.1 (31 Hofstra L. Rev. at 1083 (footnotes omitted)).

[4] It is premature to ask whether the investigation will uncover facts revealing meritorious, cognizable claims. "Until previously unpresented issues are fully explored, there is no way to determine whether or not any arguably applicable forfeiture doctrines may be overcome." Commentary to Guideline 10.15.1 (31 HOFSTRA L. REV. at 1086 n.350).

attorneys cannot conduct that investigation unless this court grants them the ability to contact the jurors.

The obligation placed on federal habeas counsel by the United States Supreme Court, the Ninth Circuit, and the American Bar Association to conduct a thorough investigation and to assert all possible constitutional violations in the habeas petition constitutes a showing of good cause sufficient to satisfy Rule 39.2.

### 2. This Court Should Allow Federal Postconviction Counsel to Conduct the Required Investigation

In his direct appeal to the Ninth Circuit, Lezmond Mitchell argued that prosecutorial misconduct in the form of improper statements made as a part of its closing argument deprived Mitchell of a fair trial. The Ninth Circuit agreed with Mr. Mitchell that the comments were indeed improper, however the Ninth Circuit denied relief stating that the burden is on Mitchell "to show that the misconduct tainted the verdict." *United States v. Mitchell*, 502 F.3d 931, 996 (9th Cir. 2007). The Ninth Circuit ruled that Mr. Mitchell had failed to meet his burden, and thus ruled that the government's misconduct did not affect Mitchell's substantial rights. *Id.*

Here, Mr. Mitchell seeks the opportunity to meet his burden. The only objective measure to determine whether Mitchell's rights were impacted is by actually interviewing the jurors on this issue. Frequently, however, when a petitioner requests post-verdict contact with jurors, courts hesitate to grant such contact based upon Federal Rule of Evidence 606(b). *See, e.g.*, *United States v. Rice*, 446 F.2d 1390 (9th Cir. 1971).

Federal Rule of Evidence 606(b) states:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the

> course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith. But a juror may testify about (1) whether extraneous prejudicial information was improperly brought to the jury's attention, (2) whether any outside influence was improperly brought to bear upon any juror, or (3) whether there was a mistake in entering the verdict on to the verdict form.

The Ninth Circuit has specifically stated that the "rule of juror incompetency [Rule 606(b)] cannot be applied in such an unfair manner as to deny due process." *United States v. Henley*, 238 F.3d 1111 (9th Cir. 2001). In the present case, Mr. Mitchell would indeed be denied due process if the Court insisted he meet a burden of proof, but denied him access to the only direct evidence to meet that burden.

In *Rushen v. Spain*, 464 U.S. 114 (1983), the United States Supreme Court clarified that a "juror may testify concerning any mental bias in matters unrelated to the specific issues that the juror was called upon to decide . . . ." *Rushen v. Spain*, 464 U.S. 114, 121 n.5 (1983) (citing Fed.R.Evid. 606(b)). The Ninth Circuit has specifically ruled that "racial prejudice is a mental bias that is unrelated to the specific issues that the juror was called upon to decide." *Henley*, 238 F.3d at 1120. And thus suggested that "racial bias is generally not subject to Rule 606(b)'s prohibitions against juror testimony." *Id.*

Regarding the prosecutor's many comments that the Ninth Circuit agreed were inappropriate, one comment dealt specifically with Lezmond Mitchell's apparent rejection of the Navajo religion. *See* RTT 4180[5]; *Mitchell*, 502 F.3d at 994-5. There is no debate that religious comments are inappropriate in penalty

---

[5] "RTT" refers to the Reporter's Transcript at Trial.

phase proceedings (*see e.g.*, *Sandoval v. Calderon*, 241 F.3d 765, 777 (9th Cir. 2001)), but the Ninth Circuit found that Mitchell had failed to meet his burden of showing that the prosecutor's comments tainted the verdict. *Mitchell*, 502 F.3d at 996. Mitchell seeks to interview the jurors about racial and religious prejudice on this point to see whether Mitchell's Navajo beliefs, or the allegation that the crime violated his Navajo beliefs, played any part in his death sentence. Religious prejudice, like racial prejudice, is a mental bias "unrelated to the specific issues that the juror was called upon to decide" and thus should not be subject to Rule 606(b). *See Rushen*, 464 U.S. at 121 n.5, and *Henley*, 238 F.3d at 1120.

Furthermore, Mr. Mitchell's crimes and trial were highly publicized in both the local and state-wide media. The importance of close scrutiny for any inappropriate juror contact is heightened when a sensational case results in an emotionally charged, highly publicized trial. *See Sheppard v. Maxwell*, 384 U.S. 333, 351 (1966) (quoting *Patterson v. State of Colorado*, 205 U.S. 454, 462 (1907)).

Mitchell's case is considered a "landmark" federal trial because it marked the first time that federal officials in the United States Department of Justice and, consequently, in Arizona, prosecuted a case under the 1994 Federal Death Penalty Act. The many articles published in connection with the case spoke of "crime sprees," "brutal killings," a remorseless Lezmond Mitchell, and increasing gang violence. Moreover, many reporters put the blame for these acts on two men: Lezmond Mitchell and another man who, they explained, was ineligible for the death penalty. Furthermore, some of the articles included information about a second multiple-murder and an erroneous report that Lezmond Mitchell was arrested in connection with that crime. Perhaps most damning, however, was an

article stating that Mitchell, along with the other five men with whom he had been arrested, had been bragging about their violent escapades to such an extent that the other inmates at the Window Rock jail had twice beaten them. The article explained that as a result of these beatings, Mitchell and his cohorts had to be separated from the general population. It is well settled that a juror's consideration of news articles is prejudicial and can warrant a new trial, *see e.g., United States v. Littlefield*, 752 F.2d 1429 (9th Cir. 1985), and extensive media coverage can deprive a defendant of a fair trial. *Sheppard v. Maxwell*, 384 U.S. 333, 362 (1966). Obviously the articles concerning Mr. Mitchell are highly prejudicial, and inquiry as to whether they were improperly brought to the jury's attention is legitimate and admissible under Federal Rule of Evidence 606(b)(1).

Finally, there were at least two acts of potential juror misconduct that occurred during the guilt phase portion of the case. On April 30, 2003, Judge Murguia received a note from an unnamed juror asking if the jury was permitted to consult "detailed maps" of the locations involved in the case. RT 2769. The Court's response was to give the jury an instruction at the end of the day informing them that they should not conduct any independent investigation or consult outside sources. (RTT 2769.) The jurors were never questioned as to who sent this note or for what purpose. Present counsel has never been provided a copy of this note.

The note itself is ambiguous, it is not clear if the author is asking if she can consult an outside source for her own knowledge or if she is writing in response to others in the jury room consulting outside sources and wondering if this is allowed. This is an important distinction as the latter would involve extraneous,

possibly prejudicial information and/or outside influence, evidence of which is admissible under Rule 606(b).

Also on April 30, 2003, Judge Murguia received a note from Alternate Juror Murphy stating that he had been in the company of three men who were discussing Mitchell's trial. (RTT 2770.) At the end of the day, the Court addressed this issue with Mr. Murphy who stated that the men only said the name of the case in his presence. (RT 2909.) He did, however, make a comment that Mitchell finds deeply disturbing, after telling the Court that the men said the name of the case he stated: "Yeah, that's all that was said. I was kind of glad because I didn't want to say anything about it either." (*Id.*) Mr. Murphy clearly indicates that had the men spoke further about the case, he would have been inclined to speak about the case as well.

Jurors are obviously banned from engaging in such conversations, and knowing Mr. Murphy's inclination to not abide by this rule, he must be interviewed to ensure that no such indiscretions took place. Such testimony would be admissible per Rule 606(b) as this would be evidence of an outside influence that may have improperly affected Mr. Murphy.

These notes indicate a strong possibility that outside influence and extraneous prejudicial information tainted the jury, and Mr. Mitchell's representatives must be permitted to investigate fully to ensure that this was not the case. Moreover, given that Mitchell was never provided with copies of these notes, it is all the more imperative that Mitchell confirm exactly what happened.

Neither this Court nor the Ninth Circuit has explicitly defined what constitutes "good cause" under Rule 39.2. This Court has, however, defined good cause under Rule 1.11, the predecessor to Rule 39.2, articulating a high burden of

proof for the individual seeking to interview jurors. The court cited Ninth Circuit precedent in support of this position, stating:

> Defendants bear the burden of showing that the verdict would have been different but for the presence of the external influence. 'Where a losing party in a civil case seeks to impeach a jury verdict, it must be shown by a preponderance of the evidence that the outcome would have been different.' *Hard*, 870 F.2d at 1461. Without such a showing, the Court need not order additional investigation, since, 'an evidentiary hearing is justified only when these materials are sufficient on their face to require setting aside a verdict.' *Id.*

*TIG Ins. Co. v. Liberty Mut. Ins. Co.*, 250 F.Supp.2d 1197, 1199 (D. Ariz. 2003) (quoting *Hard v. Burlington Northern Railroad Co.*, 870 F.2d 1454, 1461 (9th Cir. 1989)) .

In *TIG*, after losing a civil judgement, the defense sought to interview jurors based upon belief that extraneous evidence influenced the jury. This Court denied this request stating that the "Defendants' burden . . . is to show that the information they seek will show by a preponderance of the evidence that the outcome would have been different." *TIG Ins. Co.*, 250 F.Supp.2d at 1199. Because the defense stated that they were currently in the "investigation stage" of the case and could not yet meet this burden, the court denied them the opportunity to investigate. *Id.*

Mr. Mitchell's situation is distinguished from *TIG* for several reasons. First and most obvious, *TIG* involved an appeal stemming from a civil matter while Mitchell's case concerns a § 2255 proceeding following the appeal of a criminal conviction resulting in a death sentence. The Ninth Circuit was careful in noting that the burden of proof applied in a *civil* case. *Id.*; *Hard*, 870 F.2d at 1461. Neither the Ninth Circuit nor this Court has articulated the burden in a criminal

case, and certainly not in a postconviction proceeding challenging judgments of conviction and death sentence. This is noteworthy because, unlike an ordinary trial motion, the writ of habeas corpus is explicitly recognized in the Constitution.[6] U.S. Const. Art. I, § 9, cl. 2. Dubbed the "Great Writ," this procedural remedy "plays a vital role in protecting constitutional rights." *Hamdi v. Rumsfeld*, 542 U.S. 507, 536, (2004); *Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Due to the importance of the habeas corpus right, it is incumbent on counsel to "conduct a reasonable and diligent investigation aimed at including all relevant claims and grounds for relief." *McCleskey v. Zant,* 499 U.S. 467, 498 (1991). This necessarily entails conducting an appropriate inquiry of the jurors to determine whether a constitutional violation has occurred.

Secondly, and perhaps most importantly, this Court misapplied the standard the Ninth Circuit articulated. In *TIG,* the defense sought the court's permission to interview jurors. In *Hard*, the defense had *already* interviewed the jurors and was before the court seeking a new trial based upon affidavits from jurors. As a matter of fact, the standard that the court applied was taken entirely out of context. The Ninth Circuit reviewed the defense position in *Hard* and stated:

> Looking only at affidavits and testimony admissible under Rule 606(b), the court must decide whether an evidentiary hearing is required to determine whether a new trial is necessary. An evidentiary hearing is justified only when these materials are sufficient on their face to require setting aside the verdict. Where a losing party in a civil case seeks to impeach a jury verdict, it must be

---

[6] While federal habeas petitions are now brought under the statutory scheme adopted by Congress, the writ has been in no way diluted. *See* 28 U.S.C. § 2255 (2006); *Davis v. United States*, 417 U.S. 333, 343 (1974) (section 2255 is "intended to afford federal prisoners a remedy identical in scope to federal habeas corpus"); *Hill v. United States*, 368 U.S. 424, 427 (1962).

> shown by a preponderance of the evidence that the outcome would have been different. Unless the affidavits on their face support this conclusion, no evidentiary hearing is required. Unless such a showing is made at the evidentiary hearing, no new trial is required.

*Hard*, 870 F.2d at 1461.

The Ninth Circuit did not articulate a standard to determine if juror interviews should be allowed, but rather articulated the standard to be applied *after* the interviews had taken place to determine whether to grant a motion for a new trial based upon those interviews. The Ninth Circuit's standard, in context, is logical. Indeed it is prudent and efficient to require the moving party to show that the outcome would have been different once they have completed their investigation, provided all evidence to the court, and moved for a new trial. This Court, however, applied this standard *before* the moving party was given an opportunity to investigate, thus it is entirely illogical to require that they show they would win on a motion for a new trial before they have filed or been given the opportunity to investigate such.

In the present case, Mitchell does not seek to impeach the verdict and is not currently filing a motion for a new trial. Rather Mitchell simply seeks to address the burden the Ninth Circuit set for him in his direct appeal and to conduct a full and thorough investigation as required by law. Thus the burden set forth in *Hard* is inapplicable to Mitchell's motion to interview jurors.

Finally, as the Ninth Circuit has clearly articulated with regards to Rule 606(b), the rule must give away to the demands of due process. *See Henley*, 238 F.3d at 1120. If the Ninth Circuit has ruled that the Federal Rules of Evidence cannot bar due process then certainly Local Rule 39.2 must be likewise limited.

Given that the Ninth Circuit has not ruled on "good cause" as it relates to Rule 39.2 and the closest District of Arizona opinion is limited to civil cases, misapplies the laws, and, in this case, would violate due process, the appropriate standard is not clear. The Eleventh Circuit has clearly defined "good cause" as it relates to a Southern District of Florida local rule almost identical to Rule 39.2, explaining that "good cause under the local rule may be shown only by satisfying the requirements of the exception stated in [Federal Rule of Evidence 606(b)]." *United States v. Camacho*, 865 F.Supp. 1527, 1531 (S.D. Fl. 1994) (quoting *United States v. Griek*, 920 F.2d 840, 842 (11th Cir. 1991)).

The Ninth Circuit standard, as it relates to Rule 39.2, is in all likelihood the same as the Eleventh Circuit approach. Admissibility under rule 606(b) is often the deciding factor in issues related to requests for post-verdict contact with jurors, suggesting that this is the major impediment to receiving the court's approval for such interviews. *See, e.g.*, *United States v. Rice*, 446 F.2d 1390 (9th Cir. 1971). Moreover the structure of Rule 39.2, where the "good cause" language is immediately followed by a citation to Federal Rule of Evidence 606(b), suggests that the key to attaining the court's permission to interview jurors is that the information sought is admissible under 606(b).

The burden placed on Mr. Mitchell by the Ninth Circuit and the fact that the information Mitchell seeks is admissible under 606(b) constitutes a showing of good cause sufficient to satisfy the requirements of Rule 39.2.

///

///

///

## E. CONCLUSION

For all the foregoing reasons, there is good cause to authorize counsel for Mr. Mitchell to conduct a thorough investigation, which includes interviewing the trial jurors, and therefore this motion should be granted.

Respectfully submitted,

SEAN K. KENNEDY
Federal Public Defender

DATED: May 22, 2009

By: */s/ Statia Peakheart*
STATIA PEAKHEART
Deputy Federal Public Defender

Counsel for Petitioner
LEZMOND CHARLES MITCHELL

**CERTIFICATE OF SERVICE**

☐ I hereby certify that on __________________, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

☒ I hereby certify that on 05/22/09, I served the attached document by mail

(insert service method: mail, courier service, in-person delivery, e-mail)
on the following, who are not registered participants of the CM/ECF System:
Kristine Fox, Senior Capital Case Staff Attorney
Evo A. DeConcini Courthouse, 405 W. Congress, Suite 1500
Tucson, AZ 85701-5010

s/