CUAUTEMOC ORTEGA (Cal. Bar No. 257443)
Interim Federal Public Defender
JONATHAN C. AMINOFF (Cal. Bar No. 259290)
(E-Mail: Jonathan_Aminoff@fd.org)
CELESTE BACCHI (Cal. Bar No. 307119)
(E-Mail: Celeste_Bacchi@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-5374
Facsimile: (213) 894-0310

Attorneys for Defendant
Lezmond Charles Mitchell

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

United States of America,

Plaintiff,

v.

Lezmond Charles Mitchell,

Defendant.

Criminal No. 3:01-CR-01062-DGC

(Civil No. 3:09-CV-08089-DGC)

**DEATH-PENALTY CASE**

**EXECUTION SET FOR AUGUST 26, 2020**

Honorable David G. Campbell
United States District Judge

**COMBINED REPLY IN SUPPORT OF (1) PLAINTIFF'S EMERGENCY MOTION TO STRIKE EXECUTION WARRANT AND VACATE EXECUTION DATE AND (2) PLAINTIFF'S MOTION FOR STAY OF EXECUTION**

**Oral Argument: August 12, 2020**
**Time: 2:30 p.m.**

## TABLE OF CONTENTS

Page

I. REPLY IN SUPPORT OF MOTION TO VACATE EXECUTION DATE ................ 1

A. Mitchell has not improperly delayed this litigation. .................................. 1

B. The FDPA requires adherence to more than the states' chosen method of execution. .......................................................................................... 2

C. The BOP protocols are inconsistent with the manner prescribed by Arizona law. ........................................................................................... 5

D. Mitchell has sought the appropriate remedy. .............................................. 7

II. REPLY IN SUPPORT OF MOTION FOR STAY OF EXECUTION ........................ 8

A. Mitchell has not delayed. ............................................................................ 8

B. Mitchell has establish a substantial case for relief that requires a factual analysis by this Court. .................................................................... 8

C. Mitchell has established irreparable injury ................................................ 8

D. The balance of equities and the public interest weighs in favor of a stay ... 8

III. CONCLUSION ........................................................................................... 9

# I. REPLY IN SUPPORT OF MOTION TO VACATE EXECUTION DATE

## A. Mitchell has not improperly delayed this litigation.

The Government argues that because Mitchell "has known about the language of his Judgment since 2003" and he received a notice of execution in 2019, he improperly delayed by presenting this issue now. But the Government's position ignores key facts about the timing of litigation in this case.

Mitchell received notice of his December 11, 2019 execution date on July 25, 2019—the same day that the Department of Justice issued its new lethal injection protocol. Considering that Mitchell had active litigation in the Ninth Circuit and there had not been an operative federal execution protocol for eight years, the notice of his execution was unexpected. On August 5, 2019, Mitchell moved this Court for a stay of execution pending the resolution of his previously filed appeal. Dkt. No. 84. After a status conference, this Court denied the motion on jurisdictional grounds on August 30, 2019. Dkt. No. 92. Mitchell then filed a motion for stay of execution in the Ninth Circuit on September 9, 2019, which was granted on October 4, 2019. *Mitchell v. United States*, Ninth Circuit Case No. 18-17031, Dkt. No. 26.

Once the Ninth Circuit stayed Mitchell's execution beyond his 2019 execution date, there was no noticed execution to challenge.

Indeed, any claim challenging the interplay between this Court's judgment and lethal injection protocols was not ripe until the Government rescheduled Mitchell's execution. "[A] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296 (1998) (internal citations and quotations omitted). And had Mitchell's Rule 60 appeal been successful, he would have been permitted to re-open his habeas proceedings, and a ripe challenge to his judgment would have been pushed even farther into the future. Mitchell has not manipulated the process or unduly delayed in bringing this challenge. Rather, he has pursued his habeas appeal "in the normal

course," *Buck v. Davis*, 137 S. Ct. 759, 774 (2017), and now properly raises his FDPA challenge pursuant to the notice of execution issued just two weeks ago.

The fact that a separate group of death-sentenced inmates were pursing this claim together in the district court for the District of Columbia is of no consequence. Mitchell removed himself, *pro se*, from that lawsuit (without a hearing to determine whether he understood the implications of his actions) before the Government noticed his first execution date and has pursued all rights and remedies, to date, in this Court and the Ninth Circuit Court of Appeals.

Finally, the Government's attempt to switch the burden to Mitchell for the timing of Mitchell's motion is a red herring. This Court warned the Government on August 8, 2019, that the Court understood the January 2004 judgment as requiring that Mitchell's execution follow Arizona state procedures. Dkt. No. 606 at 83-84. Despite the fact that Arizona has readily available, well-established lethal injection procedures, the Government elected, once again, to disobey this Court's order and schedule Mitchell's execution to proceed in Indiana in accordance with the BOP's lethal injection procedure. The Government cannot now call foul when Mitchell holds them to a judgment that was issued 16 years ago and to which this Court drew their attention over a year ago.

### B. The FDPA requires adherence to more than the states' chosen method of execution.

The Government's arguments about the meaning of "manner" within the FDPA ignore Mitchell's very argument: while that term can include the method chosen by states, manner also has a broader sweep. For example, the Government cites to *Andres v. United States*, in which the Supreme Court addressed an argument that the 1937 law "provides for no method of inflicting the death penalty where that sentence is imposed by a district court sitting in a Territory." *Andres v. United States*, 333 U.S. 740, 745 (1948). Because manner is a broader term, if the law did not address the manner of execution in territories, it necessarily didn't provide the method; and if the law required

federal executions to follow the State manner of execution, it necessarily followed its method. The Supreme Court's decision in *Baze v. Rees*, 553 U.S. 35 (2008), supports this understanding. The court used "manner" to refer to "execution procedures"—including Kentucky's choice of a three-drug protocol over a one-drug protocol, as well as its protocols requiring monitoring by trained personnel—not simply the choice to use lethal injection. *See id.* at 51, 56-57 (plurality opinion) (referring to specific drug protocols as part of the "manner of imposing a death sentence").

The legislative materials provided by the Government don't support its claim. In Exhibit C to the Government's Opposition, both the House report and the letter included do not use the terms method and manner interchangeably; they use method exclusively when discussing hanging. Dkt. No. 611, Ex. C ("The method of imposition of the death sentence imposed by federal courts is by hanging, which has been the method employed since the beginning of Government."; "many of the states have changed the method of execution and enacted more humane methods").

Similarly, while the 1942 BOP Manual of Policies and Procedures (Dkt. No. 611, Ex. F) may have confirmed BOP's understanding that the term manner means method of imposing death, that does not mean its understanding was right, especially in light of legislative history and BOP practice. The Government has conceded that "nearly all executions conducted under the 1937 statute took place in state facilities." *In re Fed. Bureau of Prisons' Execution Protocol Cases*, 955 F.3d at 137 (Rao, J., conc.) (citing Government statements at oral argument); *see also* Dkt. No. 611 at 10-11. And while the Government claims that the 1942 Manual properly defines the law, it fails to show that BOP executions conducted in state facilities did not actually follow state procedures. For example, the Government cites newspaper articles relating to two executions under the 1937 law (Dkt. No. 611, Exhibits D and E); but neither article demonstrates that those executions only followed the method, and not the manner,

prescribed in the state's execution protocol.[1] Thus, it is not implausible to think that Congress would subsequently draft statutory language requiring that executions be implemented in compliance with state procedures.

Moreover, the Government's narrow focus on the word "manner" discounts the broader context and important differences between the texts of the historic statutes. The 1790 statute required that "the manner of inflicting the punishment of death, shall be by hanging the person convicted by the neck until dead." Crimes Act of 1790, ch.9, § 33, 1 Stat. 112, 119, Dkt. No. 611, Ex. A. The 1937 statute incorporated some of the old language, providing that "[t]he manner of inflicting the punishment of death shall be the manner prescribed by the laws of the State within which the sentence is imposed." *See* Pub. L. No. 75-156, 50 Stat. 304, Dkt. No 660, Exhibit B. When Congress enacted the FDPA, it again incorporated some of the previous language, but also made additional amendments, so that the statute now provides that the marshal shall supervise "*implementation of the sentence* in the manner prescribed by the law of the State in which the sentence is imposed." 18 U.S.C. § 3596(a). The Government ignores Congress's choice to broaden the scope of the statute from the infliction of the punishment of death to the implementation of the sentence. Contrary to the Government's claim that "[n]othing in the statutory language or history suggests any intended change," it is, in fact, the change in statutory language that suggests an intended change in meaning. Dkt. No. 611 at 7.

Several of the Government's remaining arguments rely on the supposed consequences of an interpretation of the FDPA that requires following state procedures.

---

[1] The Government's reliance on the six more recent executions are also unavailing. Timothy McVeigh had dropped all challenges to his execution, so this issue was simply never litigated. Jo Thomas, *McVeigh Ends Appeal of His Death Sentence*, N.Y. Times (Dec. 13, 2000). Nor has counsel located any litigation by Louis Jones on this issue. Of course this claim was raised by Daniel Lee, Wesley Purkey, and Dustin Honken in their consolidated litigation. *In re Fed. Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106. The decision of the Court of Appeals for the District of Columbia is not binding on this Court, but more importantly the legal status of Arizona's protocols distinguishes Mitchell's situation.

The Government suggests that following the state procedures would be virtually impossible. But the statute's explicit authorization of employing state facilities and personnel facilitates exactly this process. Next the Government raises the spectre of states precluding federal executions, either due to obstinance or secrecy laws. Dkt. No. 611 at 12. This problem is currently purely hypothetical. But if such issues did arise, problems in implementing a statute Congress passed mean that Congress, not the courts or the BOP, should amend the law.

Finally, while the Government relies extensively on Judge Katsas's conclusion that manner and method are synonymous, the two other judges on the D.C. Court of Appeals rejected that reading of the statute. Contrary to the Government's claims, under Judge Rao's or Judge Tatel's view, the federal protocol conflicts with Arizona law.

**C. The BOP protocols are inconsistent with the manner prescribed by Arizona law.**

Part of the holding of the Court of Appeals in the *Federal Protocols* consolidated case was that "because the state protocols *in this case* do not appear to have the binding force of law, they cannot be deemed part of the law of the state." *In re Fed. Bureau of Prisons' Execution Protocol Cases*, 955 F.3d at 124 n.10 (Katsas, J., conc.) (emphasis added). The same cannot be said here. The Government's effort to distinguish the role of the Arizona protocol from binding regulations is illusory.

As Judge Rao explained, "[t]he Supreme Court has emphasized that something is 'prescribed by law' when it includes binding requirements." *Id.* at 132 (Rao, J., conc.), *cited in* Dkt. 611 at 13. If the question is whether the stipulation in the *First Amendment Coalition* suit governing the protocol has the binding force of law, the language provides a clear answer: yes. The stipulation entered by the Arizona Attorney General's Office explicitly provides that the protocol creates legally enforceable rights. Dkt. 606, Ex. D. Moreover, the stipulation limits the discretion of the Arizona Department of Corrections ("ADOC") and its Director—i.e., binds them—in several significant areas:

- timeframes set forth in the ADOC's execution procedures regarding issues that are central to the execution process, which include but are not limited to those relating to execution chemicals and dosages, consciousness checks, and access of the press and counsel to the execution itself;
- changes to types and quantities of chemicals to be used;
- notice relating to testing of chemicals to show their identity and concentration.

Dkt. No. 606, Ex. D. This legally enforceable limitation on discretion gives the Arizona protocol the "force and effect of law." *See Chrysler Corp. v. Brown*, 441 U.S. 281, 295-96 (1979).

And those protocol differ in meaningful ways from the BOP protocol. The Government dismisses some of the points of distinction Mitchell highlighted in his motion, including "pre-execution notices and disclosures," and the permitted discretion of officials. Dkt. No. 611 at 15. But notice of procedures and limitation of discretion to vary from those procedures are the very things that ensure compliance with the relevant procedures.

While the BOP protocol does not have the same requirement of qualifications for those placing IV lines, the Government assures there is no conflict because it will use "qualified personnel." Dkt. No. 611 at 16. But the principle enshrined in the FDPA is deference to state decisions on important matters relating to the implementation of death sentences; the BOP making its own judgment on such matters is exactly what the statute seeks to avoid. This choice is reasonable given that the states have substantially more experience conducting executions than the federal government.

More broadly, the Government argues that its protocols do not conflict with Arizona's because where Arizona states requirements, the Government does not. Essentially, the Government argues, there is no conflict because it could follow Arizona's procedures if it chose. But it is this discretion itself, where the state judges there should be none, that conflicts with the law prescribed by the state.

**D. Mitchell has sought the appropriate remedy.**

Mitchell has filed a motion to vacate his August 26, 2020 execution date because the Government's notice indicates that it intends to violate this Court's January 8, 2003 Order when it executes Mitchell. He additionally seeks an order enjoining the Government from continuing to violate this Court's January 2004 Order, as well as a stay of execution until this motion is resolved. In sum, the relief Mitchell seeks is an execution that complies with the FDPA, as expressed in this Court's January 2004 Order.

The Government does not quarrel with Mitchell's request to vacate the August 26, 2020 execution date. Instead, the Government complains that Mitchell has not established "real-world harm" to justify his requested injunction. Opposition at 17. In actuality, Mitchell has establish irreparable harm. Dkt. No. 609 at 7. Specifically, Mitchell points to the robust and time-tested Arizona state protocols, and the safety measures they provide including increased training of the execution team, versus the newly created BOP procedures with its limited safety measures.

The Government claims that Mitchell is categorically barred from injunctive relief because he seeks to bar his execution via the BOP protocol and instead be executed pursuant to Arizona's protocol. In the Government's view, asking the government for injunctive relief to "replicate[] every jot-and-tittle of the relevant state execution protocols" is improper. Dkt. No. 611 at 17 (citing *Protocol Cases*, 955 F.3d at 126-29 (Katsas, J., concurring). Yet, despite the Government's extensive reliance on *Barr v. Roane*, 140 S. Ct. 353 (2019) and its "appropriate dispatch" language in other parts of its Response, the Government fails to cite *Roane* in this portion of its brief. This omission is curious given the fact that a *unanimous* Supreme Court upheld the grant of a preliminary injunction to four plaintiffs alleging identical harm to what Mitchell now alleges. Indeed, like the *Roane* plaintiffs, Mitchell has shown that absent injunctive relief, his death sentence will be executed in an unlawful fashion. The district court, whose decision the Supreme Court unanimously upheld, found this harm

to be "manifestly irreparable." *Protocol Cases*, No. 12-CV-0782, 2019 WL 6691814 at *11 (D.D.C. Nov. 20, 2019).[2] The Government's argument is thus foreclosed.

## II. REPLY IN SUPPORT OF MOTION FOR STAY OF EXECUTION

### A. Mitchell has not delayed.

For the reasons articulated above, Mitchell's motion is timely.

### B. Mitchell has establish a substantial case for relief that requires a factual analysis by this Court.

For the reasons articulated above, Mitchell presents a substantial issue for relief.

### C. Mitchell has established irreparable injury

Mitchell has made specific allegations regarding irreparable harm. Dkt. No. 609 at 7. Regardless, as established above, the Unite States Supreme Court unanimously upheld the district court for the District of Columbia's finding that the *Roane* Plaintiffs established irreparable harm where the "Plaintiffs have clearly shown that, absent injunctive relief, they will suffer the irreparable harm of being executed under a potentially unlawful procedure before their claims can be fully adjudicated. Given this showing, the court need not reach the various other irreparable harms that Plaintiffs allege." *Protocol Cases*, No. 12-CV-0782, 2019 WL 6691814, at *7 (D.D.C. Nov. 20, 2019), *vacated and remanded on other grounds sub nom. In re Fed. Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106 (D.C. Cir. 2020), *cert. denied sub nom. Bourgeois v. Barr*, No. (19A1050), 2020 WL 3492763 (U.S. June 29, 2020).

### D. The balance of equities and the public interest weighs in favor of a stay

Mitchell has established how the balance of equities favor a stay. The thrust of the Government's response is that the Government has a strong interest in finality. This argument rings hollow after the Government delayed over eight years before

---

[2] When the circuit court overturned the district court decision, they did not reject the district court's analysis regarding the preliminary injunction, Instead, they decided the case on the merits and vacated the preliminary injunction on that basis. *Protocol Cases*, 955 F.3d at 112. Accordingly, the district court's analysis on the preliminary injunction, unanimously upheld by the Supreme Court, survives the circuit court's decision.

issuing a new lethal injection protocol. *Protocol Cases*, 2019 WL 6691814 at *7. Regardless, as the district court held in the *Protocol Cases*, "the potential harm to the government caused by a delayed execution is not substantial." *Id*. at *7.

Moreover, the public has no interest in an illegal execution and in short circuiting a legitimate judicial process, but has a great interest in ensuring that the most serious punishment is enforced lawfully. *Id*. at *8.

## III. CONCLUSION

Accordingly, as in *Protocol Cases*, the Court should stay Mitchell's execution until this claim can be adequately reviewed. Once this Court reviews the claim, Mitchell respectfully requests that the Court vacate the execution date and issue an Order enjoining the Government from further violations of the Court's January Order.

Respectfully submitted,

CUAUTEMOC ORTEGA
Interim Federal Public Defender

DATED: August 11, 2020

By */s/ Jonathan Aminoff*

JONATHAN C. AMINOFF
CELESTE BACCHI
Deputy Federal Public Defenders

Attorneys for Defendant
Lezmond Charles Mitchell

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of August, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

William G. Voit, Assistant U.S. Attorney
Arizona State Bar No. 025808
William.Voit@usdoj.gov

Sharon Sexton, Assistant U.S. Attorney
Arizona State Bar No. 012359
Sharon.Sexton@usdoj.gov

*/s/ Iliana Hernandez*
Iliana Hernandez